**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
IRVING FIREMEN'S RELIEF AND : No. 1:14-cv-08495-RMB
RETIREMENT FUND, Individually and on :
Behalf of All Others Similarly Situated, : **CLASS ACTION**
  :
      Plaintiffs, :
  :
  vs. :
  :
TESCO PLC, PHILIP CLARKE, and LAURIE :
MCILWEE, :
  :
      Defendants. :
------------------------------------------------------------ x
KASEY M. BUGGS, Individually and on : No. 1:14-cv-08696-RMB
Behalf of All Others Similarly Situated, :
  : **CLASS ACTION**
      Plaintiff, :
  :
  vs. :
  :
TESCO PLC, PHILIP CLARKE, and LAURIE :
MCILWEE, :
  :
      Defendants. :
------------------------------------------------------------ x
SUNRISE SQUARE CAPITAL, LP, : No. 1:14-cv-09378-RMB
Individually and on Behalf of All Others :
Similarly Situated, : **CLASS ACTION**
  :
      Plaintiff, :
  :
  vs. :
  :
TESCO PLC, SIR RICHARD BROADBENT, :
PHILIP CLARKE and LAURIE MCILWEE, :
  :
      Defendants. :
------------------------------------------------------------ x
*[caption continues on next page]*

**MEMORANDUM OF LAW IN SUPPORT OF SHEET METAL WORKERS'
NATIONAL PENSION FUND'S MOTION FOR CONSOLIDATION, APPOINTMENT
AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

| | |
|---|---|
| ---------------------------------------------------------- x | |
| CHESTER COUNTY EMPLOYEES RETIREMENT FUND, Individually and on Behalf of All Others Similarly Situated, : : : | No. 1:14-cv-09757-RMB **CLASS ACTION** |
| Plaintiff, : | |
| vs. : | |
| TESCO PLC, PHILIP CLARKE, LAURIE MCILWEE, SIR RICHARD BROADBENT, and CHRIS BUSH, : : : | |
| Defendants. : | |
| ---------------------------------------------------------- x | |
| STEPHEN M. DAVIDSON, Individually and on Behalf of All Others Similarly Situated, : : | No. 1:14-cv-09927-UA **CLASS ACTION** |
| Plaintiff, : | |
| vs. : | |
| TESCO PLC, PHILIP CLARKE, and LAURIE, : | |
| Defendants. : | |
| ---------------------------------------------------------- x | |
| ALSAR LTD. PARTNERSHIP, Individually and on Behalf of All Others Similarly Situated, : : | No. 1:14-cv-10020-RMB **CLASS ACTION** |
| Plaintiff, : | |
| vs. : | |
| TESCO PLC, PHILIP CLARKE, LAURIE MCILWEE, SIR RICHARD BROADBENT, and CHRIS BUSH, : : : | |
| Defendants. : | |
| ---------------------------------------------------------- x | |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

FACTUAL ALLEGATIONS ........................................................................................................... 3

ARGUMENT .................................................................................................................................... 6

    I.    The Related Actions Should Be Consolidated ..................................................................... 6

    II.    National Pension Fund Should Be Appointed As Lead Plaintiff ........................................ 7

        A.    National Pension Fund's Motion Is Timely .............................................................. 8

        B.    National Pension Fund has the Largest Financial Interest in the Relief Sought by the Class ............................................................................................................... 8

        C.    National Pension Fund Satisfies Rule 23 of the Federal Rules of Civil Procedure at This Stage ............................................................................................................. 9

            1.    National Pension Fund Is Typical ................................................................. 9

            2.    National Pension Fund Is Adequate ............................................................ 10

    III.    The Court Should Approve National Pension Fund's Selection of Counsel .................... 11

CONCLUSION .............................................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*Foley v. Transocean Ltd.*
   272 F.R.D. 126 (S.D.N.Y. 2011) .................................................................................. 8

*In re Cendant*
   264 F.3d 201 (3d Cir. 2001) ...................................................................................... 10

*In re NPS Pharmaceuticals, Inc. Securities Litigation*,
   No. 2:06-cv-570, 2006 WL 6627948 (D. Utah Nov. 17, 2006) ................................ 11

*Kaplan v. Gelfond*
   240 F.R.D. 88 (S.D.N.Y. 2007) .................................................................................. 6

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*
   256 F.R.D. 620 (E.D. Wis. 2009) ........................................................................... 1, 2

*Richman v. Goldman Sachs Grp., Inc.*
   274 F.R.D. 473 (S.D.N.Y. 2011) ............................................................................ 6, 7

*Sczesny Trust v. KPMG LLP*
   223 F.R.D. 319 (S.D.N.Y. 2004) ................................................................................ 6

*Sgalambo v. McKenzie*,
   268 F.R.D. 170, 173 (S.D.N.Y. 2010) ........................................................................ 9

**STATUTES**

15 U.S.C. § 78u-4(a)(1) ..................................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(A)(i) ............................................................................................ 8

15 U.S.C. § 78u-4(a)(3)(B) ....................................................................................... passim

**OTHER AUTHORITIES**

1995 U.S.C.A.A.N. 679 ..................................................................................................... 3

1995 U.S.C.A.A.N. 730 ................................................................................................ 3, 10

H.R. Rep. No. 104-369 (1995) ..................................................................................... 3, 10

S. Rep. No. 104-98 (1995) ................................................................................................. 3

**RULES**

Fed. R. Civ. P. 42(a) .......................................................................................................... 7

Sheet Metal Workers' National Pension Fund ("National Pension Fund") respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an order: (1) consolidating all related actions; (2) appointing National Pension Fund as Lead Plaintiff for a proposed Class consisting of all investors who purchased or otherwise acquired American Depositary Receipts ("ADRs") and/or Ordinary F shares of Tesco PLC ("Tesco" or the "Company") during the period from April 18, 2012, through October 22, 2014, inclusive (the "Class Period"); and (3) approving National Pension Fund's selection of Motley Rice LLC ("Motley Rice") as Lead Counsel on behalf of the proposed Class.

## INTRODUCTION

Pending before the Court are at least six related securities fraud class action lawsuits (the "Related Actions")[1] filed against Tesco; Philip Clarke ("Clarke"), the Company's former Group Chief Executive Officer; Laurie McIlwee ("McIlwee"), the Company's former Chief Financial Officer; Sir Richard Broadbent ("Broadbent"), the Company's Chairman of the Board of Directors (added in *Sunrise Square Capital* Action); and Chris Bush ("Bush"), the Company's former Chief Operating Officer (added in *Chester County* Action)[2] (collectively,

---

[1]    The Related Actions are *Irving Firemen's Relief & Retirement Fund v. Tesco PLC, et al.*, No. 1:14-cv-08495-RMB, filed on October 23, 2014 ("*Irving Firemen* Action"); *Buggs v. Tesco PLC, et al.*, No. 1:14-cv-08696-RMB, filed on October 31, 2014 ("*Buggs* Action"); *Sunrise Square Capital, LP v. Tesco PLC, et al.*, No. 1:14-cv-09378-RMB, filed on November 25, 2014 ("*Sunrise Square Capital* Action"); *Chester County Employees Retirement Fund v. Tesco PLC, et al.*, No. 1:14-cv-09757-RMB, filed on December 10, 2014 ("*Chester County* Action"); *Davidson v. Tesco PLC, et al.*, No. 1:14-cv-09927-UA, filed on December 16, 2014 ("*Davidson* Action"); and *Alsar Ltd. Partnership v. Tesco PLC, et al.*, No. 1:14-cv-10020-RMB, filed on December 19, 2014 ("*Alsar* Action").

[2]    The *Alsar* Action asserts the longest class period of the six related actions currently pending in this District:  April 18, 2012, through October 22, 2014, inclusive.  National Pension Fund's financial interest calculations are based on this class period.  *See Plumbers & Pipefitters*

1

"Defendants"). The complaints of the Related Actions allege that, during the Class Period, Defendants repeatedly misrepresented key elements concerning the Company's business, operations, and prospects, thus artificially inflating the price of its securities. When these misrepresentations were revealed to the public, the price of Tesco's securities declined precipitously as the prior artificial inflation came out of the price of the securities over time.

National Pension Fund respectfully submits that, pursuant to the Exchange Act, as amended by the PSLRA, it should be appointed to serve as Lead Plaintiff on behalf of the putative Class. National Pension Fund is a sophisticated and experienced institutional investor with ample resources and capability to oversee complex litigation. Further, National Pension Fund has the largest financial interest of any movant properly before the Court, having suffered losses of $2,397,320, when calculated on a last-in-last-out ("LIFO") basis. *See* Certification and Loss Chart, Decl. of Rebecca M. Katz ("Katz Decl."), Exs. A & B, submitted herewith.

In light of these significant losses, National Pension Fund has a large financial interest in prosecuting this case – an interest believed to be greater than that of any competing movant. National Pension Fund also meets the typicality and adequacy requirements set out in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), because National Pension Fund's claims are typical of those of absent Class members and National Pension Fund will fairly and adequately represent the interests of the proposed Class. Like the other members of the putative Class, National Pension Fund seeks recovery of losses incurred as a result of declines in the share price of Tesco securities purchased on markets in the United States.

In a case of this scale, it is essential that any court-appointed lead plaintiff be large and sophisticated enough to play a meaningful role in managing potentially sprawling litigation.

---

*Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (relying upon longer class period to assess financial interest).

Here, National Pension Fund is exactly the type of investor whose participation in securities class actions the PSLRA was meant to foster. *See* H.R. Conf. Rep. No. 104-369 at 34 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730, 733; S. Rep. No. 104-98 at 6 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 685. Indeed, National Pension Fund has significant experience prosecuting securities class actions on behalf of injured investors. *See* Certification, Katz Decl., Ex. A.

Finally, the Court should approve National Pension Fund's selection of Motley Rice as Lead Counsel for the proposed Class. In this case, the claims of the proposed Class will be best protected by the experience and resources of Motley Rice, which has the expertise and resources necessary to handle litigation of this scale.

## FACTUAL ALLEGATIONS

Based in Cheshunt, United Kingdom ("U.K."), Tesco is the largest retailer in the U.K. and the third largest retailer in the world, with annual sales behind only Wal-Mart Stores Inc. and France's Carrefour SA. The Company operates stores in 12 countries, and has 3,300 stores and over 310,000 employees. Tesco's common stock trades primarily on the London Stock Exchange, and the Company's ADRs, and certain of its ordinary shares, trade on over-the-counter markets in the United States. While Tesco's operations expand globally, its profit center is still in the U.K., which accounts for over 70% of the Company's annual sales.

The complaints of the Related Actions allege that, throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company improperly recognized revenue early and delayed accrual of costs; (2) that, as a result, the Company overstated its profit forecast for fiscal 2015; (3) that the Company misrepresented its financial statements and guidance forecasts; and (4) that, as a result of the foregoing,

3

Defendants' statements about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

The Class Period begins on April 18, 2012, when, following a further decline in the Company's U.K. sales, Tesco unveiled a £1 billion U.K. revival plan, termed "Build a Better Tesco," which included upgrading stores and recruiting more staff while promising better prices and value in response to complaints that its 2,800 U.K. stores were cold and industrial with poor customer service. Crucial elements of this plan included a "pricing and promotions" sub-strategy to aggressively demand payments for promotions.

Throughout the Class Period, Defendants touted the "progress" and "strengthening" the Company's U.K. business was achieving through its "Build a Better Tesco" strategy. In addition, the Company's executives also claimed to have renewed the Company's commitment to transparency to shareholders. For example, in Tesco's 2014 Annual Report, the Company told investors that it had purportedly enhanced its financial disclosures and strengthened its commitment to ensuring "levels of transparency and disclosure [to shareholders] which are undoubtedly now world-leading." In truth, however, the Company was the opposite of transparent.

Unbeknownst to investors, the Company's reported financial results were not driven by a change in business strategy or Tesco's actual financial performance, but were the result of fraud. Specifically, the Company engaged in various practices designed to artificially inflate Tesco's reported profits, including by improperly recognizing commercial income and delaying accrued costs. According to sources cited in the news media, in practical terms, this meant Tesco squeezed its suppliers, which frequently pay funds to retailers like Tesco to promote their products by, for example, providing better placement on shelves, for visibility on "plinths" at the

4

end of aisles where customers are more likely to see products, or for two-for-one offers. By aggressively demanding payments for such promotions, Tesco would be able to book the original payment as revenue prematurely even though the suppliers would dispute the payments later.

Then, on September 22, 2014, the Company announced that Tesco's most recent profit forecast for fiscal 2015 was overestimated by approximately £250 million (approx. U.S. $400 million), primarily due to the accelerated recognition of commercial income and delayed accrual of costs. According to the Company, a comprehensive independent investigation was in process to investigate serious accounting issues. On this news, shares of Tesco ADRs declined $1.68 per share, nearly 15%, to close on September 22, 2014, at $9.61 per share, on unusually heavy volume.

Moreover, on October 1, 2014, the U.K.'s Financial Conduct Authority notified Tesco that it had commenced a full investigation following the Company's announcement of overstatement of expected profit. On this news, Tesco shares fell nearly 4%, or $0.31 per share, to close on October 1, 2014, at $8.78 per share. The stock continued to decline over the following two trading sessions to close on October 3, 2014, at $8.26 per share, a three day decline of $0.83 per share, or nearly 10%.

Finally, on October 23, 2014, the Company issued an interim financial and operational report entitled "Interim Results 2015/15" wherein Tesco disclosed that an independent investigation by Deloitte had concluded that there was a gross overstatement of profit expectations, and that the fraudulent revenue recognition and accounting practices to increase profits had occurred over several reporting periods. That same day, Broadbent announced his resignation, telling investors that he was "deeply disappointed" about the accounting

irregularities, calling the developments a "matter of profound regret." On these revelations, the Company's shares fell $0.52 per share, or 6%, to close on October 23, 2014, at $8.18 per share.

## ARGUMENT

### I. The Related Actions Should Be Consolidated

Consolidation pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)") is proper when actions involve common questions of law and fact. *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475 (S.D.N.Y. 2011). This Court has broad discretion under Rule 42(a) to consolidate cases pending within this district. *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Under Rule 42(a), we have broad discretion to determine whether to consolidate actions.").

Courts have recognized that class action shareholder suits, in particular, are ideally suited for consolidation pursuant to Rule 42(a). Indeed, § 21D(a)(3)(B) of the Exchange Act contemplates the consolidation of multiple actions "asserting substantially the same claim or claims." *See* 15 U.S.C. § 78u-4(a)(3)(B); *see also Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 322 (S.D.N.Y. 2004) ("Consolidation of multiple actions alleging securities fraud is appropriate where those actions relate to "the same 'public statements and reports.'"). Moreover, "Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan*, 240 F.R.D. at 91; *see also Sczesny Trust*, 223 F.R.D. at 322 ("Although some variations exist in the parameters of the alleged class periods, such "minor differences" are insufficient to preclude consolidation.").

The *Irving Firemen* and *Buggs* Actions are brought against Tesco, Clarke, and McIlwee, on behalf of all persons or entities who purchased or otherwise acquired ADRs between February

6

2, 2014, and September 22, 2014. The *Sunrise Square Capital* Action is brought against the above-named defendants, in addition to Broadbent, on behalf of all persons or entities who purchased or otherwise acquired ADRs between January 9, 2014, and October 22, 2014. The *Chester County* Action is brought against all the above-named defendants, as well as Bush, on behalf of all investors who purchased ADRs between April 17, 2013, and October 22, 2014. The *Alsar Ltd.* Action is the most expansive action brought against all the above-named defendants on behalf of all investors who purchased ADRs between April 18, 2012, and October 22, 2014. Finally, the *Davidson* Action is brought on behalf of all persons or entities that purchased or otherwise acquired Tesco PLC Ordinary F shares (over-the-counter traded common stock) on an American exchange between April 17, 2013, and October 22, 2014, inclusive.

All of the Related Actions seek the same remedies pursuant to §§ 10(b) and 20(a) of the Exchange Act. In addition, the Related Actions allege the same class claims brought on behalf of acquirers of Tesco securities who purchased in reliance on Defendants' materially false and misleading statements and/or omissions during the Class Period. When these misrepresentations were revealed to the public, Tesco experienced a precipitous decline in the market value of the Company's securities, causing the proposed Class to suffer significant losses and damages. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Richman,* 274 F.R.D. at 475.

National Pension Fund respectfully submits that the requirements for consolidation are met here and that the Related Actions should be consolidated.

**II.   National Pension Fund Should Be Appointed As Lead Plaintiff**

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-

7

4(a)(3)(B)(i).  First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).  National Pension Fund meets these requirements and should therefore be appointed as Lead Plaintiff.

### A. National Pension Fund's Motion Is Timely

The notice published in this action on October 23, 2014, advised class members of (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed class period; and (4) the right to move the Court to be appointed as lead plaintiff by December 22, 2014.  *See* Katz Decl., Ex. C.  Because National Pension Fund's motion is timely filed, it is entitled to be considered for appointment as Lead Plaintiff.

### B. National Pension Fund has the Largest Financial Interest in the Relief Sought by the Class

"The PSLRA does not address which method of loss calculation should be employed, but courts in this district and others have stated a preference for LIFO over FIFO [first-in-first-out] in assessing loss for purposes of the appointment of lead plaintiff."  *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011) (citations omitted). During the Class Period, National Pension Fund suffered LIFO losses of $2,397,320 from purchases of Tesco ADRs.  *See* Certification and Loss Chart, Katz Decl., Exs. A, B.  To the best of its counsel's knowledge,

8

there are no other plaintiffs with a larger financial interest than National Pension Fund. Therefore, National Pension Fund satisfies the PSLRA's prerequisite of having the largest financial interest in the relief sought by the Class.

### C. National Pension Fund Satisfies Rule 23 of the Federal Rules of Civil Procedure at This Stage

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23.'" *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010) (citation omitted). "'Typicality' 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* at 173-74 (citation omitted). "'The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class . . . .'" *Id.* at 174 (citation omitted).

#### 1. National Pension Fund Is Typical

National Pension Fund purchased a substantial amount of Tesco securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements and suffered damages when the truth leaked into the market. National Pension Fund's claims therefore arise from the same factual predicate as those in the complaints. *See id.* Accordingly, National Pension Fund satisfies the typicality requirement.

### 2. National Pension Fund Is Adequate

First, there is no conflict between National Pension Fund and the Class. Both National Pension Fund and the Class seek to recover losses caused by the Defendants' fraud. Second, as explained below, National Pension Fund has selected a highly qualified firm with significant experience prosecuting class action lawsuits under the federal securities laws to serve as Lead Counsel for the Class. *See infra* § C.; *see also* Motley Rice Firm Resume, Katz Decl., Ex. D.

In addition to satisfying the requirements of Rule 23, National Pension Fund is precisely the type of investor Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA. *See In re Cendant*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (PSLRA was designed "to increase the likelihood that institutional investors will serve as lead plaintiff") (quoting H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730, 733).

National Pension Fund, with net assets of approximately $4 billion, is a multiemployer pension fund organized to provide retirement benefits to National Pension Fund participants and their spouses. Further, National Pension Fund has served as a lead plaintiff in other securities actions and its experience will benefit the Class. *See* Certification, Katz Decl., Ex. A. National Pension Fund's familiarity with the PSLRA's requirements is derived from, among other things, its appointment as a Lead Plaintiff in *City of Sterling Heights General Employees' Retirement System v. Hospira, Inc., et al.*, No. 11-cv-08332-AJS, 2012 WL 1339678 (N.D. Ill. April 18, 2012). On August 5, 2014, the court issued an order granting final approval of a settlement resolving all claims in *Hospira* in exchange for payment of $60 million for the benefit of the class.

Moreover, National Pension Fund is not subject to impediments or unique defenses and there is no evidence that it seeks anything other than the greatest recovery for the class consistent with the merits of the claims.

As such, National Pension Fund satisfies the typicality and adequacy requirements at this stage.

## III. The Court Should Approve National Pension Fund's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

National Pension Fund has selected Motley Rice to serve as Lead Counsel for the proposed Class. Motley Rice has previously been appointed as lead counsel and has a demonstrated ability to work in an efficient fashion in the class's best interests. *See* Motley Rice Firm Resume, Katz Decl., Ex. D. Motley Rice is currently serving as Lead Counsel or Co-lead Counsel, in this District, in several high profile securities class actions against Avon Products, Inc., Barrick Gold Corp., and S.A.C. Capital Advisors, L.P. (now known as Point72 Asset Management), among others. *See id.* Indeed, as noted in the lead plaintiff order for the *City of Brockton Retirement System v. Avon Products, Inc.*, No. 11-cv-04665, ECF No. 21 (S.D.N.Y. Sept. 23, 2011), "The Court, having reviewed the motion . . . finds that Motley Rice is qualified to serve as Lead Counsel." *See also In re NPS Pharm., Inc. Sec. Litig.*, No. 2:06-cv-570, 2006 WL 6627948, at *4 (D. Utah Nov. 17, 2006) (Motley Rice has "expertise and experience in the prosecution of shareholder and securities class actions and, as a result, [is] adequate to represent the interests of the class."). Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

Accordingly, the Court should approve National Pension Fund's selection of Motley Rice as Lead Counsel for the Class.

## CONCLUSION

For the foregoing reasons, National Pension Fund respectfully requests that the Court: (1) consolidate all Related Actions; (2) appoint National Pension Fund as Lead Plaintiff pursuant to the PSLRA; and (3) approve National Pension Fund's selection of Motley Rice to serve as Lead Counsel for the proposed Class.

DATED:  December 22, 2014                              *Respectfully submitted*,

**MOTLEY RICE LLC**

*s/ Rebecca M. Katz*
Rebecca M. Katz

600 Third Avenue, Suite 2101
New York, NY  10016
Telephone:     212/577-0040
Facsimile:      212/577-0054
Email:            rkatz@motleyrice.com

James M. Hughes
David P. Abel
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:     843/216-9000
Facsimile:      843/216-9450
Emails:           jhughes@motleyrice.com
                      dabel@motleyrice.com

*Counsel for Proposed Lead Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 22, 2014.

*s/ Rebecca M. Katz*
Rebecca M. Katz

MOTLEY RICE LLC
600 Third Avenue, Suite 2101
New York, NY  10016
Telephone:	212/577-0040
Facsimile:	212/577-0054
Email:	rkatz@motleyrice.com