USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/19/15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

IRVING FIREMEN'S RELIEF AND          :
RETIREMENT FUND,                     :
                                     :
                    Plaintiff,       :
                                     :     14 Civ. 8495 (RMB)
        -against-                    :
                                     :
TESCO PLC et al.,                    :     **DECISION & ORDER**
                                     :
                    Defendants.      :
----------------------------------------------------------------X
KASEY M. BUGGS,                      :
                                     :
                    Plaintiff,       :
                                     :     14 Civ. 8696 (RMB)
        -against-                    :
                                     :
TESCO PLC et al.,                    :
                                     :
                    Defendants.      :
----------------------------------------------------------------X
CHESTER COUNTY EMPLOYEES             :
RETIREMENT FUND,                     :
                                     :
                    Plaintiff,       :
                                     :     14 Civ. 9757 (RMB)
        -against-                    :
                                     :
TESCO PLC et al.,                    :
                                     :
                    Defendants.      :
----------------------------------------------------------------X
STEPHEN M. DAVIDSON,                 :
                                     :
                    Plaintiff,       :
                                     :     14 Civ. 9927 (RMB)
        -against-                    :
                                     :
TESCO PLC et al.,                    :
                                     :
                    Defendants.      :
----------------------------------------------------------------X

-----------------------------------------------------------X
ALSAR LTD. PARTNERSHIP,                         :
                                                :
                        Plaintiff,              :
                                                :        14 Civ. 10020 (RMB)
        -against-                               :
                                                :
TESCO PLC et al.,                               :
                                                :
                        Defendants.             :
-----------------------------------------------------------X

Having reviewed the record herein, including **(i)** the complaints filed in the above-captioned cases alleging, among other things, that Defendant Tesco PLC ("Tesco") and certain of its officers "made false and/or misleading statements and/or failed to disclose the truth regarding the company's financial condition," in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78t(a). (See, e.g. Class Action Compl. filed by Irving Firemen's Relief and Retirement Fund, dated Oct. 23, 2014, ¶ 3); **(ii)** the six motions to appoint a particular lead plaintiff, to approve lead plaintiff's selection of counsel, and to consolidate the above-captioned actions, all filed on December 22, 2014 (see Motion to Appoint Stephen Davidson to Serve as Lead Plaintiff, dated Dec. 22, 2014 ("Davidson Mot."); Motion to Consolidate Cases and to Appoint Sheet Metal Workers' National Pension Fund to Serve as Lead Plaintiff, dated Dec. 22, 2014 ("National Pension Fund Mot."); Motion to Appoint Irving Firemen's Relief and Retirement Fund to Serve as Lead Plaintiff, dated Dec. 22, 2014 ("Irving Firemen's Mot."); Motion to Consolidate Cases and to Appoint Stephen Klug to Serve as Lead Plaintiff, dated Dec. 22, 2014 ("Klug Mot."); Motion to Consolidate Cases and to Appoint ALSAR Ltd. Partnership, David B. Butcher and Louise Butcher to Serve as Lead Plaintiffs, dated Dec. 22, 2014 ("ALSAR Mot."); Motion to Appoint Miami Police Relief & Pension Fund and Chester County Employees Retirement Fund to Serve as Lead Plaintiffs, dated

2

Dec. 22, 2014 ("Miami Police Mot.")); (iii) the supplemental briefs filed in support of the motions of Sheet Metal Workers' National Pension Fund ("National Pension Fund"), Stephen Klug ("Klug"), and Stephen Davidson ("Davidson"), all filed on January 9, 2015 (see Mem. of Law in Further Supp. of Mot. of Sheet Metal Workers' National Pension Fund, dated Jan. 9, 2015 ("National Pension Fund Supp. Br."); Letter from Gregory Nespole to Hon. Richard M. Berman, dated Jan. 9, 2015; Letter from Kim E. Miller to Hon. Richard M. Berman, dated Jan. 9, 2015); and (iv) applicable law; **the Court hereby grants Stephen Klug's motion for consolidation, appointment as lead plaintiff, and appointment of Kahn, Swick & Foti as lead plaintiff's counsel, as follows:**

### Consolidation of Related Cases

Under Federal Rule of Civil Procedure 42(a), the Court may consolidate several actions "involve[ing] a common question of law or fact." Fed. R. Civ. P. 42(a); see Kaplan v. Gelfond, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Under Rule 42(a), we have broad discretion to determine whether to consolidate actions, and in making this determination, we are to consider whether judicial economy favors consolidation.").

Consolidation of the above-captioned five actions against Tesco is appropriate because they present common questions of law and fact. All of the complaints are related and all of the complaints describe the same allegedly fraudulent conduct, which allegedly occurred during the time period between April 18, 2012 and September 22, 2014. For example, all of the complaints allege that "on September 22, 2014, Tesco surprised the market when it announced that it had overstated its expected profit for the half year because it had improperly accelerated recognition of income and delayed accrual of certain costs" and that "[a]s a result of Defendants' wrongful

3

acts and omissions, Tesco ADRs traded at artificially inflated prices during the Class Period."

(Class Action Compl. filed by Irving Firemen's Relief and Retirement Fund, dated Oct. 23,

2014, ¶¶ 3, 5.) Further, all of the actions present the same two causes of action, namely,

violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§

78j(b) & 78t(a). "Given the overlapping questions of law and fact presented in the cases before

us, litigating a multitude of separate actions would only ensure the duplication of effort amongst

parties and the needless expenditure of judicial resources." Kaplan, 240 F.R.D. at 92.

### Appointment of Stephen Klug as Lead Plaintiff

The Private Securities Litigation Reform Act of 1995 ("PSLRA") governs the

appointment of a lead plaintiff in a private class action brought under the Securities Exchange

Act. See 15 U.S.C. § 78u–4(a)(1) & (a)(3)(B)(i). The PSLRA provides that the Court "shall

appoint as lead plaintiff the member or members of the purported plaintiff class that the court

determines to be most capable of adequately representing the interests of class members." 15

U.S.C. § 78u–4(a)(3)(B)(i). The PSLRA also establishes a presumption that the "most adequate

plaintiff" is "the person or group of persons" that: (1) "has either filed the complaint or made a

motion in response to a notice [published by a complainant]"; (2) "in the determination of the

court, has the largest financial interest in the relief sought by the class"; and (3) "otherwise

satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–

4(a)(3)(B)(iii)(I). "[T]he question of which plaintiff or group of plaintiffs has the greatest

financial stake . . . is the pivotal factor under the PSLRA." Elstein v. Net1 UEPS Techs., Inc.,

No. 13 Civ. 9100, 2014 WL 3687277, at *3 (S.D.N.Y. July 23, 2014) (internal quotation marks

omitted). The Court concludes that Stephen Klug best meets the aforementioned requirements.

4

All six of the parties seeking appointment as lead plaintiff have satisfied the first requirement cited above by filing timely motions. (See supra at 4.) The question of which party has the largest financial interest in the relief sought by the class is more complicated. Courts in the Second Circuit have used four factors to analyze a lead plaintiff's financial interest: "(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered." Foley v. Transocean Ltd., 272 F.R.D. 126, 127–28 (S.D.N.Y. 2011) (citations omitted). "The most important factor is financial loss." Reitan v. China Mobile Games & Entertainment Grp., Ltd., No. 14 Civ. 4471, 2014 WL 6491433, at *4 (S.D.N.Y. Nov. 20, 2014); see also Weiss v. Friedman, Billings, Ramsey Grp., Inc., No. 05 Civ. 4617, 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) ("The amount of financial loss is the most significant of [the] elements"). The Court concludes that Klug's alleged loss of $926,302 constitutes the largest (demonstrable) financial interest of the six movants.

National Pension Fund claims to have suffered the largest dollar amount loss of all the potential lead plaintiffs, i.e., $2,397,320.00. (National Pension Fund Mot. at 2.) The movant which reported the second largest dollar amount loss is the (aggregated) group consisting of ALSAR Ltd. Partnership ("ALSAR"), David B. Butcher and Louise Butcher ("Butchers"). These potential lead plaintiffs report a combined financial loss of $991,033. (ALSAR Mot. at 2.) Klug reports the third largest loss in the amount of $926,302. (Ex. B to Decl. of Kim E. Miller in Supp. of Klug Mot., dated Dec. 22, 2014.) The aggregated group of Miami Police Relief &

5

Pension Fund and Chester County Employees Retirement Fund ($164,017.64), Irving Firemen's Relief and Retirement Fund ($163,029.51), and Stephen M. Davidson ($82,151.83) report the fourth, fifth and sixth largest financial losses, respectively. (Ex. B to Decl. of Gerald H. Silk in Supp. of Miami Police Mot.; Irving Firemen's Mot. at 2; Davidson Mot. at 6.)

Klug, in his supplemental brief dated January 9, 2015, argues persuasively that National Pension Fund's "losses are inaccurate." (Letter from Kim E. Miller to Hon. Richard M. Berman, dated Jan. 9, 2015, at 2.) That is, Klug claims, based upon publicly available historical trading data, that National Pension Fund's loss is overstated because it "lists various trades that either fall outside of the daily price range (below the daily low) or constitute more shares traded on a given day than the total trading volume on the over-the-counter ("OTC") market for the stock on such days." (Id.) The Court's review of publicly available trading data confirms the discrepancies in National Pension Fund's submission identified by Klug. For example, National Pension Fund claims to have purchased 287,161 shares of Tesco on May 9, 2014, but the publicly-reported total volume of shares sold on that day was not more than 226,800. (See Tesco PLC Historical Prices, http://finance.yahoo.com/q/hp?s =TSCDY+Historical+Prices (last visited Mar. 19, 2015).)

By Order dated February 2, 2015, the Court invited National Pension Fund to respond to Klug's arguments (on or before February 4, 2015) and stated that "[a]ny response should include [an] explanation re[garding] apparent discrepancies [in National Pension Fund's Motion]." (Order, dated Feb. 2, 2015.) National Pension Fund failed to provide the requested "explanation" but instead, in a letter dated February 5, 2015, stated that "National Pension Fund chose not to respond to Klug's letter because National Pension Fund's [supplemental brief] . . . and accompanying bank statement trade confirmations . . . had already fully addressed and

6

disproved any purported discrepancies . . . ." (Letter from Rebecca M. Katz to Hon. Richard M. Berman, dated Feb. 5, 2015.) The Court disagrees. National Pension Fund's Opposition—and the bank statements attached thereto—do **not** address or explain the discrepancies, including the difference between National Pension Fund's reported volume of Tesco share purchases on May 9, 2014, and the publicly-reported total volume of Tesco shares sold on that day. (See National Pension Fund Supp. Br. at 6.) Thus, the Court is unable to verify its claimed losses which "undermines [its] adequacy" as lead plaintiff. Bhojwani v. Pistiolis, No. 06 Civ. 13761, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (where the court "identified . . . discrepancies, this time between the data derived from the Fidelity statements and the 'corroborative backup data'").

ALSAR and the Butchers (combined) reported a financial loss of $991,033, which consists of ALSAR's reported loss of $423,690, and David and Louise Butcher's loss of $567,343. (See ALSAR Mot. at 2; Ex. C to Decl. of Jeremy A. Lieberman in Supp. of ALSAR Mot., dated Dec. 22, 2014.) While many courts in this Circuit allow the aggregation of unrelated plaintiffs' financial interests for the purposes of appointment of lead plaintiff, "courts have required that unrelated plaintiffs seeking appointment as a group make an evidentiary showing that they will be able to function cohesively and to effectively manage the litigation apart from their lawyers." Elstein, 2014 WL 3687277, at * 3 (internal quotation marks and citations omitted). ALSAR and the Butchers have not made such a showing.

Factors that courts have considered when evaluating whether a group's members will function cohesively and separately from their lawyers include evidence of: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5)

7

whether the members chose outside counsel, and not vice versa." Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). In their motion, ALSAR and the Butchers provide no information supporting **any** of these factors.

The largest unchallenged reported loss belongs to Klug who, as noted, reports a loss of $926,302. (See Ex. B to Decl. of Kim E. Miller in Supp. of Klug Mot., dated Dec. 22, 2014.) In addition, Klug reports that he purchased 224,619 net shares of Tesco and expended net funds amounting to $2,860,272. (See Ex. B to Decl. of Kim E. Miller in Supp. of Klug Mot., dated Dec. 22, 2014.) These verified amounts are larger than those reported by any other potential lead plaintiff. (See supra at 4–5.) Accordingly, the Court finds that Klug has demonstrated that he has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

The Court also concludes that Klug "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure," 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I), namely "typicality and adequacy of representation." In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998). Klug satisfies the typicality requirement because "other members [of the purported class] are likely to assert claims arising from the same course of events and similar legal arguments as [Klug] has." Elstein, 2014 WL 3687277, at *7. Klug also satisfies the adequacy requirement because (1) class counsel Kahn Swick & Foti appears to be qualified, experienced in these matters, and able to conduct the litigation; (2) there is no apparent conflict between Klug and the members of the class; and (3) Klug has a sufficient interest in the outcome of the case to ensure vigorous advocacy. See id.

In a supplemental brief, dated January 9, 2015, Stephen Davidson argues that he should be appointed co-lead plaintiff because he "was the only movant who . . . purchased [Tesco Class

8

F Shares] during the relevant time period" and "Tesco Ordinary F shares . . . are a distinct class of security from the Tesco PLC American Depository Receipt ('ADR') shares purchased by the other movants [including Klug]." (Letter from Gregory Nespole to Hon. Richard M. Berman, dated Jan. 9, 2015, at 1–2.)   Davidson states: "Ordinary F purchasers face the threat of disenfranchisement in the event that the Court ultimately determines at the class certification or motion to dismiss stage that ADR purchasers lack standing to represent Ordinary F purchasers." (Id. at 2.)

The Court finds Davidson's argument unpersuasive.   "[P]laintiffs who . . . purchased certain securities ha[ve] class standing to assert claims on behalf of purchasers of other related securities where the allegedly fraudulent conduct was a 'nearly identical misrepresentation . . . . common to every . . . registration statement." DiMuro v. Clinique Labs., LLC, 572 F. App'x. 27, 29 (2d Cir. 2014) (quoting NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 162 (2d Cir. 2012).   Moreover, "it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." Hevesi v. Citigroup, Inc., 366 F.3d 70, 82 (2d Cir. 2004)   Indeed, "any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." Hevesi, 366 F.3d at 82 n.13.   "If certain class claims cannot be advanced because of standing . . . issues, this deficiency can be corrected [at the class certification stage] by the designation of other members of the purported class as named plaintiffs or class representatives." Fishbury, Ltd. v. Connetics Corp., 06 Civ. 11496, 2006 WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2006); see also Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319,

9

325 (S.D.N.Y. 2004) (where "the interests of Polaroid option investors and shareholders are not sufficiently differentiated to require the appointment of a 'niche' lead plaintiff at this time").

### Lead Plaintiff's Counsel

The PSLRA provides that a court-appointed lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel." Elstein, 2014 WL 3687277, at * 8.

Klug has selected the law firm of Kahn Swick & Foti as counsel. Kahn Swick & Foti is a "law firm with offices in New York City, San Francisco and Louisiana" which "focuses predominantly on class actions, in the areas of securities and consumer fraud, and on shareholder derivative and other complex litigation." (Ex. D to Decl. of Kim E. Miller in Supp. of Klug Mot., dated Dec. 22, 2014, at 2.) None of the movants has raised any objections with respect to the firm's ability to adequately and competently litigate this case. Accordingly, the Court appoints Kahn Swich & Foti as lead plaintiff's counsel.

### Conclusion & Order

For the reasons stated herein, the Court grants Stephen Klug's motion [#27], and hereby orders: (1) that the above-captioned actions be consolidated for all purposes pursuant to Fed. R. Civ. P. 42(a), under the caption: In re Tesco PLC Securities Litigation, Master File No. 14 Civ. 8495 (RMB); (2) that Stephen Klug is appointed to serve as lead plaintiff in the consolidated action; and (3) that the law firm of Kahn Swick & Foti is appointed to serve as lead counsel for the class in the consolidated action.

The motions by competing movants [Nos. 19, 22, 26, 31, and 35] are hereby denied.

10

The parties are directed to appear on April 16, 2015 at 10:30 for a status/scheduling

conference.


Dated: New York, New York
      March 19, 2015

 

**RICHARD M. BERMAN, U.S.D.J.**

11