UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

IN RE TESCO PLC SECURITIES LITIGATION

-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __5/26/16__

14 CIV. 8495 (RMB)

**DECISION & ORDER**
**APPROVING SETTLEMENT**

## I. Background

On June 18, 2015, Stephen Klug ("Klug" or "Lead Plaintiff"), represented by attorneys

Kahn Swick & Foti, LLC ("Lead Counsel" or "Class Counsel"), filed the Second Consolidated

Amended Class Action Complaint "on behalf of all persons or entities who purchased or otherwise

acquired American Depository Shares ('ADRs') of Tesco PLC . . . between April 18, 2012 and

September 22, 2014" ("Plaintiffs"), against Tesco PLC ("Tesco"), and Tesco's former Chief

Executive Officer Philip Clarke, former Chief Financial Officer Laurie McIlwee, and former

Chairman of the Board Sir Richard Broadbent (collectively, "Defendants"). (Second Consolidated

Am. Class Action Compl., dated Mar. 19, 2015 ("Complaint"), at 2; Decision & Order, dated Mar.

19, 2015, at 8-9.)[1] The Complaint was filed pursuant to Section 10(b) of the Securities Exchange

Act of 1934 and Rule 10b-5 promulgated thereunder. (Id. at 96.) Plaintiffs alleged that

Defendants engaged in an "accounting scheme," including "accelerated recognition of commercial

income and delayed accrual of costs," in order to maintain artificially high market prices for

Tesco's securities. (Id. at 2, 7, 97.) Tesco is a grocery and general merchandise retailer based in

the United Kingdom. (Id. at 2.)

---

[1] On March 19, 2015, the Court consolidated six related putative class action lawsuits against
Defendants, appointing Klug as Lead Plaintiff and approving Kahn Swick & Foti, LLC as Lead
Counsel. (See Decision & Order, dated Mar. 19, 2015, at 3, 10.)

1

On August 17, 2015, Defendants moved to dismiss the Complaint. (Defs.' Mem. of Law in Supp. of Their Mot. To Dismiss the Consolidated Am. Compl., dated Aug. 17, 2015.) On October 1, 2015, Plaintiffs opposed Defendants' motion to dismiss. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss, dated Oct. 1, 2015.) And, on October 15, 2015, Defendants filed a Reply. (Defs.' Mem. of Law in Further Supp. of its Mot. To Dismiss, dated Oct. 15, 2015.)

On November 19, 2015, prior to the resolution of Defendants' motion to dismiss, the parties entered into a Stipulation of Settlement ("Settlement"), and established a $12 million settlement fund ("Settlement Fund"). (Stip. of Settlement, dated Nov. 19, 2015.) Following application to the Court, dated November 25, 2015, on December 23, 2015, the Court preliminarily approved the Settlement and preliminarily certified a class for settlement purposes. (Order Preliminarily Approving Settlement & Providing for Notice, dated Dec. 23, 2015 ("Preliminary Approval Order"), at 1.)

The Settlement provides, among other things, the following:

- The "Class" shall be defined as all persons "who purchased or otherwise acquired ADRs of Tesco" or "Tesco F Shares between April 18, 2012 and September 22, 2014, inclusive" ("Class Period") (id. at 3);

- "Excluded from the Class definition are . . . all persons and/or entities who have brought claims in the litigation captioned: Western & Southern Life Insurance Co., et al. v. Tesco PLC, No. 15-cv-658-SSB-SKB, currently pending in the United States District Court for the Southern District of Ohio" (id. at 3-4, 6-7)[2];

- "Tesco has concluded that further conduct of the Action would be protracted and expensive, and has taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this Action," and "Lead Plaintiff also is mindful of the inherent problems of proof and the possible defenses to the securities law violations asserted in the Action" (id. at 11-12);

---

[2] On February 2, 2016, the Judicial Panel on Multidistrict Litigation denied Tesco's motion to transfer the Ohio action to this District. (Order Denying Transfer, MDL No. 2680, dated Feb. 2, 2016.) At a December 15, 2015 conference, Class Counsel informed the Court that the plaintiffs in the Ohio action had requested to be excluded from the Class. (Hr'g Tr., dated Dec. 15, 2015, at 5:19-22.)

- "Tesco shall pay or cause to be paid the Settlement Amount [of \$12,000,000] . . . which, with any accrued interest, shall constitute the Settlement Fund" to be distributed after payment of costs and expenses in connection with administering the Settlement, "Taxes and Tax Expenses," and "Lead Counsel's attorneys' fees and expenses" ("Plan of Allocation") (id. at 6, 23-24)[3];

- "Tesco will not take any position on any Fee and Expense Application that . . . seeks an award of attorneys' fees in an amount not greater than thirty percent (30%) of the Settlement Fund and reimbursement of expenses incurred in connection with the prosecution of this Action not to exceed \$200,000" (id. at 27). And, "costs or expenses for notice or claims administration in excess of [\$257,147.06] shall be . . . subject to the approval of Lead Counsel and further approval of the Court" (id. at 15; Endorsed Letter from Kim E. Miller to Hon. Richard M. Berman, dated Nov. 5, 2016).

Pursuant to the Preliminary Approval Order, the Claims Administrator, Epiq Systems, Inc.

("Epiq"), mailed the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and

the form Proof of Claim to potential members of the Class, and published a summary notice in

Investor's Business Daily and PR Newswire on January 12, 2016. (Decl. of Kim E. Miller

Regarding Mailing of Notice & Claim Form & Publication of Summary Notice, dated Jan. 20,

2016, Ex. 1.) Pursuant to the Court's December 30, 2015 order, the summary notice was also

published in the Financial Times on January 12, 2016 and January 13, 2016. (Id.; Pl.'s Mem. of

Law in Supp. of Its Mot. for Final Approval of Class Action Settlement, dated Mar. 24, 2016

("Settlement Mem."), at 3.) Copies of the Complaint, Settlement, Notice, and Proof of Claim

form were "placed on a website that has been maintained by Lead Counsel (at

www.tescosecuritieslitigation.com)." (Decl. of Kim E. Miller Regarding Mailing of Notice &

Claim Form & Publication of Summary Notice, dated Jan. 20, 2016.)

On March 24, 2016, Lead Plaintiff filed a motion for final approval of the Settlement.

(Pl.'s Mot. for Final Approval of Class Action Settlement, dated Mar. 24, 2016.) Former United

---

[3] See infra p. 18 (regarding distribution of the Settlement Fund prior to payment of attorneys' fees). See, e.g., Beane v. Bank of New York Mellon, 2009 WL 874046, at *9 (S.D.N.Y. March 31, 2009); Gatto v. Sentry Services, Inc. et al, No. 13-cv-05721, Am. Order, dated May 18, 2015, at 6.

States District Judge Layn R. Phillips, who also served as the parties' mediator, submitted a declaration stating that "the parties' settlement is the product of vigorous and independent advocacy and arms-length negotiation conducted in good faith." (Decl. of Layn R. Phillips in Supp. of Settlement, dated Mar. 24, 2016 ("Phillips Decl."), at 3.) Judge Phillips also stated that "the Settlement represents a well-reasoned and sound resolution of highly uncertain litigation." (Id. at 4.)

Also, on March 24, 2016, Class Counsel filed a motion for an award of attorneys' fees and reimbursement of litigation expenses. (Pl.'s Mot. for an Award of Attorneys' Fees, dated Mar. 24, 2016.) Class Counsel seeks attorneys' fees of 20% of the $12 million Settlement Fund, which represents a reduction from "the 30% maximum fee request indicated in the Notice." (Pl.'s Mem. of Law in Supp. of Mot. for an Award of Attorneys' Fees, dated Mar. 24, 2016 ("Atty. Fees Mem."), at 4.) According to Class Counsel, 20% of the Settlement Fund would represent a "2.13 multiplier of the total lodestar" of $1,127,995.50. (Id.) Class Counsel also seeks reimbursement of $123,935.44 in expenses, including the costs of retention of experts and private investigators. (Id.)

As of April 14, 2016, the Claims Administrator had mailed a total of 111,727 notice packages to potential Class members. (Second Supplemental Decl. of Stephanie A. Thurin Regarding Notice Dissemination & Exclusion Requests, dated Apr. 14, 2016, at 2-3.) Class Counsel stated that "no objections to the Stipulation, the Settlement Amount, the Plan of Allocation, or the Applications [for attorneys' fees] have been received." (Supplemental Decl. of Kim E. Miller in Supp. of Final Approval, dated Apr. 14, 2016, at 1.) The deadline for

4

postmarking any objection was April 5, 2016. (Id.)[4]

On April 21, 2016, the Court held a fairness hearing which had been noticed pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure. (See Fairness Hr'g Tr., dated Apr. 21, 2016.) The Court heard from Class Counsel, Kim Miller, who spoke in favor of the Settlement and Class Counsel's application for attorneys' fees. (Id. at 7:16-23:21.) Defendants' counsel, George Conway, also spoke in favor of the Settlement. (Id. at 27:11-25; 41:23-43:19.) Lead Plaintiff Stephen Klug was present at the fairness hearing and requested to be heard to object to Class Counsel's application for attorneys' fees "for anything more than 20 percent" of the Settlement Fund. (Id. at 28:8-10, 29:18-19 ("I'm not here to object to the settlement itself."), 34:9-13 ("I sent [Class Counsel] an email . . . that said not only would I not support 30 percent [as an award of attorneys' fees], but if they asked for **anything more than 20 percent**, I would come to this hearing and object.").) Klug also "propose[d] that counsel be awarded fees equal to no more than their . . . actual billings," i.e. not to exceed the lodestar. (Id. at 35:16-23, 41:5-9.)[5]

On April 22, 2016, at the Court's request, Class Counsel submitted the attorney time sheets for 1,840.9 hours between April 16, 2014 and March 24, 2016 that formed the basis for its proposed lodestar of $1,127,995.50. (Letter from Kim E. Miller to Hon. Richard M. Berman, dated Apr. 22, 2016.)

On May 5, 2016, Klug filed what he termed "Lead Pl.'s Motion Pursuant to Rule 11(b)(3) for Sanctions against Kahn Swick & Foty, LLC." (Lead Pl.'s Mot. for Sanctions against Kahn

---

[4] Prior to Class Counsel's March 24, 2016 application for attorneys' fees, Lead Plaintiff Klug sent Class Counsel an "e-mail of January 6, 2016 which advised them that I would oppose a fee of 30% and [Class Counsel] acted on that e-mail by reducing the fee request from 30% to 20%." (Letter from Stephen Klug to Hon. Richard Berman, dated May 5, 2016, at 1-2; see also infra pp. 16-17.)

[5] In response, Miller stated that she "did not know that Mr. Klug was going to object to the fee today" and that Klug "had requested that we limit our fee to 20 percent, and so I thought that [when we did so] that had resolved the problem." (Fairness Hr'g Tr. at 36:5-6, 38:19-39:3.)

5

Swick & Foty, LLC, dated May 5, 2016 ("Klug's Mot.").) Klug asserts that Class Counsel's March 24, 2016 application for 20% attorneys' fees contained a "false" statement, namely that "not a single objection has been filed challenging either the Settlement or Lead Counsel's fee and reimbursement request of up to 30% of the Net Settlement Fund." (Id. at 1; Letter from Stephen Klug to Hon. Richard Berman, dated May 5, 2016 ("Klug Letter"), at 2.) Klug states that Class Counsel "concede receiving my e-mail of January 6, 2016 which advised them that I would oppose a fee of 30% and that they acted on that e-mail by reducing the fee request from 30% to 20%." (Klug Letter at 1-2.) On May 18, 2016, Class Counsel opposed Klug's motion for sanctions, stating that Class Counsel's March 24, 2016 application for attorneys' fees "was true and correct." (Class Counsel's Mem. of Law in Opp'n to Lead Pl.'s Mot. for Sanctions, dated May 18, 2016, at 1.) Class Counsel states that, prior to the April 21, 2016 fairness hearing, Klug had not submitted any objection under the Notice's procedures, and "[h]ad Lead Counsel publicly disclosed the contents of Mr. Klug's email as he apparently argues they should have, Lead Counsel would have waived the attorney-client privilege protecting their correspondence." (Id. at 2-3.) Class Counsel further states that, because it "limited its fee request to 20% in its written motion for fees and expenses, as Mr. Klug had requested," it "was not on notice that Mr. Klug intended to object to Lead Counsel's fee request" at the fairness hearing. (Id. at 2.) On May 23, 2016, Klug submitted what he termed "Lead Plaintiff's Reply to Counsel's Memorandum of Law in Opposition to Lead Plaintiff's Motion for Sanctions under Rule 11(b)(3)," asserting that Class Counsel had falsely stated in its fee application that the fee application was submitted "with the prior approval of Plaintiff, Mr. Klug." (Letter from Stephen Klug to Hon. Richard Berman, dated May 20, 2016; see also Decl. of Kim E. Miller in Supp. of Pls.' Mot. for Final Approval of Class Action Settlement, dated Mar. 24, 2016 ("Miller Decl."), at 31.) Klug states that "[t]he only communication from Plaintiff to Counsel regarding the fee request was the January 6, 2016 e-mail that plainly objected to the 30% fee." (Letter from Stephen Klug to Hon. Richard Berman, dated

6

May 20, 2016.)

As of May 20, 2016, Epiq received 83,233 Proofs of Claim, representing "greater than 60%" of the total 128,139 notice packages mailed to potential Class members. (Decl. of Stephanie A. Thurin Regarding Proofs of Claim Received and Administrative Fees and Expenses, dated May 24, 2016, at 2.) Id. On May 24, 2016, Epiq submitted a declaration requesting reimbursement of $597,992.85, i.e. its expenses for claims administration incurred through May 23, 2016, and a request for "a reserve of $32,147.96" to be approved for reimbursement of the anticipated expenses to complete the administration of the Settlement. (Id. at 6-7.) The Court's endorsement of Epiq's declaration stated, among other things, that the information and explanation for Epiq's expense request is insufficient, and the "Court is unable to approve a claims administration award at this time and likely will not do so until the claims administration phase is completed and the class members are paid." (Memo Endorsement, dated May 25, 2016.)

**For the reasons set forth below, the Settlement is approved, Class Counsel's motion for an award of attorneys' fees is granted in part and denied in part, and Klug's motion for sanctions is denied.[6]**

**II. Legal Standard**

"[W]hen considering whether to approve a class action settlement, a district court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion." D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (internal quotation marks omitted). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery," Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005), and "overseen by an experienced, neutral third-party mediator," In re

---

[6] **Any issues raised by the parties not specifically addressed herein were considered by the Court on the merits and rejected.**

7

Citigroup Inc. Bond Litig., 296 F.R.D. 147, 155 (S.D.N.Y. 2013). And, courts "are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context,'" and the "compromise of complex litigation is encouraged by the courts and favored by public policy." Wal-Mart Stores, Inc., 396 F.3d at 116-17 (citations omitted).

A party seeking attorneys' fees bears the burden of establishing entitlement to and the reasonableness of an award. Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999). "Courts have used two distinct methods to determine what is a reasonable attorneys' fee." Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000). Under the percentage method of awarding legal fees, the "court sets some percentage of the recovery as a fee." Id. Under the lodestar method, the "court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." Id. "The trend in this Circuit is toward the percentage method, which directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." Wal-Mart Stores, 396 F.3d at 121. As a result, "[t]he Second Circuit encourages using the lodestar method only as a cross-check for the percentage method." In re March & McLennan Cos., Inc. Sec. Litig., 2009 WL 5178546, at *14 (S.D.N.Y. Dec. 23, 2009) (citing Goldberger, 209 F.3d at 50). "[I]n instances where a lodestar analysis is . . . used as a 'cross check' for a percentage of recovery analysis, counsel may be entitled to a 'multiplier' of their lodestar rate," In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008), "to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." In re Flag Telecom Holdings, Ltd. Sec. Litig., 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010). Also, the "case law makes clear . . . that an award of no lodestar multiplier at all is within the district court's discretion." McDaniel v. County of Schenectady, 595 F.3d 411, 425 (2d Cir. 2010).

8

## III.   Analysis

### The Settlement Is Approved

The Court approves the Settlement as fair, reasonable, and adequate to the Class because, among other reasons, the Settlement was negotiated at arm's-length by sophisticated counsel before an experienced mediator. In re Flag Telecom Holdings, Ltd. Sec. Litig., 2010 WL 4537550, at *4. The parties "participated in an all-day formal mediation session on October 20, 2015 in New York" (Phillips Decl. at 2) before a "well-regarded mediator of complex securities cases," former United States District Judge Phillips (W.D. Ok.).[7] In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012). Judge Phillips states that "both parties made compelling arguments in support of their respective positions, evidencing thorough knowledge of the facts of the case and the law governing the action," and their mediation briefs were "supported by substantial factual, expert, and backup data." (Phillips Decl. at 2-3.) The "parties and their experts offered strong opinions on how they viewed the measure of potential damages, which set the stage for rigorous settlement negotiations." (Id. at 3; see also Miller Decl. at 20.) Class Counsel also has extensive experience handling complex plaintiffs' securities class actions. In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 160 (S.D.N.Y. 2011); (see Settlement Mem. Ex. 5). See In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 461 (S.D.N.Y. 2004).

Analysis of the (nine) Grinnell factors further supports approving the Settlement. Wal-Mart Stores, Inc., 396 F.3d at 116 (citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974)). The first Grinnell factor – the "complexity, expense and likely duration of the litigation" – favors approval of the Settlement because this case "involves complex jurisdictional

---

[7] Judge Phillips served as a United States District Judge in the Western District of Oklahoma from 1987 to 1991. (Phillips Decl. at 1.)

9

questions related to the particular securities – ADRs and F-shares – at issue." (Settlement Mem. at 8; see also Phillips Decl. at 2 ("[D]iscussion concerned unique issues regarding the territorial reach of Plaintiff's Section 10(b) claims and forum non conveniens")); In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. at 456. Plaintiffs were able to achieve a recovery for the Class despite the risks in defeating Defendants' motion to dismiss and ultimately in proving damages. (Settlement Mem. at 8-9; see also Phillips Decl. at 3 ("[C]onsiderable work was done by counsel for all parties to pursue these issues through the appellate process.").) See In re AOL Time Warner, Inc., 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006) ("Due to its notorious complexity, securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials.").

The second Grinnell factor – the "reaction of the class to the settlement" – favors approval of the Settlement insofar as no Class member objected to the Settlement. (See Fairness Hr'g Tr. at 28:8-10, 29:18-19 ("[Lead Plaintiff] KLUG: . . . I'm not here to object to the settlement itself."), 40:19-23 ("THE COURT: My understanding is that [regarding] the settlement of $12 million . . . you have approved that, because that is the number that you gave to counsel as your cutoff, right? MR. KLUG: That's correct.")); In re AOL Time Warner, Inc., 2006 WL 903236, at *9 ("Courts in this Circuit have noted that the lack of objections may well evidence the fairness of the Settlement.") (internal quotation marks and citations omitted).

The third Grinnell factor – "the stage of the proceedings and the amount of discovery completed" – weighs in favor of approving the Settlement because the parties obtained "sufficient information to make an informed judgment on the reasonableness of the settlement proposal." Beane, 2009 WL 874046, at *4; see also In re AOL Time Warner, Inc., 2006 WL 903236, at *10 ("The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy

10

of the settlement."); (Phillips Decl. at 3 ("It was apparent to me from the submissions and presentations made by the parties before and during the mediation that counsel for all parties had performed a thorough examination of the facts and law.")). Judge Phillips had proposed that Lead Counsel conduct informal discovery in order to confirm the reasonableness of the Settlement; the parties negotiated and agreed on the contours of this informal discovery; and, on November 2, 2015, Class Counsel received a substantial volume of documents from Defendants of "about 10,000 pages," including "board and executive committee notes and emails." (Miller Decl. at 15; Fairness Hr'g Tr. at 23:8-10.) See In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

"The fourth through seventh Grinnell factors – namely, the risks of establishing liability and damages, maintaining the class action, and collecting on any judgment – all support settlement." Beane, 2009 WL 874046, at *4. Class Counsel recognizes that "the gravest and most immediate risk to Plaintiff's case was raised by Defendants' novel jurisdictional challenges," including (1) their Section 10(b) argument under Morrison v. National Australia Bank Ltd., 561 U.S. 247 (2010), and (2) their *forum non conveniens* argument that the United Kingdom was the better forum for the action. (Settlement Mem. at 2; Phillips Decl. at 3.) "Defendants' success on any of these arguments would have resulted in dismissal and zero recovery for the Class." (Settlement Mem. at 3.) Additionally, Plaintiffs faced the risks of bringing any securities claims, such as establishing scienter and damages. (Id. at 2); see In re AOL Time Warner, Inc., 2006 WL 903236, at *11.

The eighth and ninth Grinnell factors – "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation" – also favor settlement. Beane,

11

2009 WL 874046, at *5. Plaintiffs state that "[t]he Settlement, which provides for payment of $12,000,000 to the Class, a recovery of approximately 25% of the maximum recoverable damages (approximately $48.1 million, as determined by Plaintiff's damages consultants) is an exceptional result for the Class, particularly in the context of other settlements in ADR . . . cases." (Settlement Mem. at 1.) Judge Phillips also states that this recovery of 25% of damages is "higher" than the typical percentage of recovery in securities class actions. (Phillips Decl. at 4.) See In re China Sunergy Sec. Litig., 2011 WL 1899715, at *2, 5 (S.D.N.Y. 2011) ("This [18.4% recovery] far surpasses the average settlement amounts in securities fraud class actions . . . over the past decade which have ranged from 3% to 7% of the class members' estimated losses.").

## The Class is Certified

The Court provisionally certified the Class via the Preliminary Approval Order (Prelim. Approval Order ¶ 3), and "[s]ince there have been no material changes to alter the propriety of [those] findings regarding the . . . Class, this action is hereby finally certified, for the purposes of settlement only, as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3)." In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., 909 F. Supp. 2d at 264; see also Weinberger v. Kendrick, 698 F.2d 61, 72 (2d Cir. 1982) ("Temporary settlement classes have proved to be quite useful in resolving major class action disputes.").

"A class seeking to be certified for purposes of effectuating a settlement must satisfy the applicable requirements of Rules 23(a) and 23(b), i.e., numerosity, commonality, typicality, adequacy of representation, predominance of common issues, and superiority." Beane, 2009 WL 874046, at *5 (citing Amchem Products. Inc. v. Windsor, 521 U.S. 591 (1997)). The Class satisfies Fed. R. Civ. P. 23(a), because it is "impracticable" to join 111,727 potential Class Members. Id. Plaintiffs allege questions of law and fact that are "common to the class." Id. For example, whether Defendants knowingly made "material misrepresentations . . . for the purpose

12

and effect of concealing Tesco's operating condition" is such a common question. (Am. Compl. at 98-99.) The Court previously concluded that Klug, as Lead Plaintiff, "satisfies the requirements of . . . typicality and adequacy of representation." (Decision & Order, dated Mar. 19, 2015, at 8.)

The Court also finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. at 159; see Amchem, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud."). Violations of the federal securities laws, such as those alleged in the Complaint, "inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible." In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. at 159.

## 17% of the Settlement Fund Is Awarded as Attorneys' Fees

Class Counsel seeks an award of attorneys' fees in the amount of 20% of the Settlement Fund and reimbursement of expenses in the amount of $123,935.44, plus interest. (Atty. Fees Mem. at 1.) Class Counsel states that it "has spent over 1,804.9 hours researching, investigating, and prosecuting this case on behalf of the Class with an aggregate lodestar of approximately $1,127,995.50." (Id. at 8.) Thus, it seeks a "multiplier" of 2.13. (Id. at 20.) According to Class Counsel, it successfully argued Klug's Motion To Be Appointed Lead Plaintiff; conducted extensive research into the underlying facts, including interviews of numerous persons and consultation with experts; filed the 92-page Complaint; "opposed Defendants' motion to dismiss"; "engaged in a formal mediation facilitated by Judge Phillips"; "reviewed and analyzed a substantial volume of discovery materials provided by Defendants"; "filed the motion for

13

preliminary approval and stipulation of settlement"; and oversaw the Settlement administration process. (Id. at 9-10.)

"Employing the percentage method of fixing Class Counsel's compensation (while relying upon the lodestar method as a 'cross-check')," the Court finds that 17% of the $12,000,000 Settlement Fund, or $2,040,000, would be a fair and reasonable fee under "the 'Goldberger factors.'" Beane, 2009 WL 874046, at *7; see Wal-Mart Stores, 396 F.3d at 121 (citing Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000)). That sum incorporates a (generous) multiplier of 1.81. See, e.g., In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d at 590.

The first Goldberger factor – "the time and labor expended by counsel" – supports (albeit is less than) the fee, based on the time sheets submitted by Class Counsel. Beane, 2009 WL 874046, at *7. Class Counsel billed 1,840.9 total hours for this case, providing time sheets that substantiate 659.3 hours billed by partners, 1790.4 hours billed by associates, and 50.5 hours billed by paralegals. (Miller Decl. Ex. 3.) Class counsel expended substantial resources in representing Plaintiffs, Gattinella v. Kors, 2016 WL 690877, at *2 (S.D.N.Y. Feb. 9, 2016), "including the retention of private investigators in the United States and the United Kingdom, the retention of an accounting consultant . . . , interviews of numerous persons with knowledge of the allegations, including former employees of Tesco, as well as third parties, [and] consultation with experts on the issues of damages and market efficiency" (Miller Decl. ¶ 4).

The second and third Goldberger factors – "the magnitude and complexities of the litigation" and "the risk of [contingency] litigation" – support the fee award. Beane, 2009 WL 874046, at *8; see also In re AOL Time Warner, Inc., 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). The case concerned unique issues regarding the territorial reach of Plaintiff's Section 10(b) claims and forum non

14

conveniens," and application of "this Court's decision in In re Société Générale Securities Litigation, No. 08 Civ. 2495 (RMB), 2010 WL 3910286 (S.D.N.Y. Sept. 29, 2010)." (Phillips Decl. at 3.) Additionally, Class Counsel's "funds were available to compensate staff, investigators and consultants, and to pay for the considerable out-of-pocket costs which a case such as this entails." (Atty. Fees Mem. at 15.) "Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated." Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 372-73 (S.D.N.Y. 2002) (where "class counsel not only undertook risks of [contingency] litigation, but advanced their own funds and financed the litigation").

The fourth Goldberger factor – "the quality of representation" – supports the fee award. Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002). Judge Phillips notes that "Lead Counsel performed a thorough examination of the merits of the claims in this action . . . in connection with the mediation in a way that produced a valuable recovery for the Class." (Phillips Decl. at 4.) "The quality of opposing counsel is also important in evaluating the quality of the services rendered by Plaintiffs' Class Counsel." Maley, 186 F. Supp. 2d at 373. Tesco was represented by George Conway of Wachtell, Lipton, Rosen, & Katz, LLP, who "briefed and argued the case for respondents in Morrison v. National Australia Bank, in which the Supreme Court held that Section 10(b) does **not** apply extraterritorially." (Atty. Fees Mem. at 18.) See Maley, 186 F. Supp. 2d at 373 ("The ability of plaintiffs' counsel to recover a settlement valued at more than $11.5 million for the Class in the face of such formidable legal opposition provides further evidence of the quality of their work.").

As to the fifth Goldberger factor – "the requested fee in relation to the settlement" – the fee award is consistent with fees granted in other similarly complex class actions. Beane, 2009 WL 874046, at *4 (awarding 16% of $2.2 million settlement fund); In re AOL Time Warner ERISA

15

Litig., 2007 WL 3145111, at *1 (awarding 17.9% of $100 million settlement fund); In re Currency Conversion Fee Antitrust Litig., 2012 WL 3878825, at *2 (S.D.N.Y. Aug. 22, 2012) (awarding 18.25% of $49.5 million settlement fund); In re WorldCom, Inc. ERISA Litig., 2004 WL 2338151, at *11 (S.D.N.Y. Oct. 18, 2004) (awarding 18% of $47.15 million settlement fund).

As to the sixth Goldberger factor – "public policy considerations" – a modified fee award of 17% both encourages class counsel to pursue securities litigations and helps ensure against excessive fees. Figueroa v. EZE Castle Integration, Inc., 2011 WL 2682129, at *2 (citing Goldberger, 209 F.3d at 53).

The reasonableness of a $2,040,000 legal fee award is confirmed by a lodestar "cross-check." Beane, 2009 WL 874046, at *8. The 17% fee award results in a lodestar multiplier of 1.81, which amply rewards Class Counsel "for the [contingency] risk they assumed . . . and the result achieved for the class." In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d at 590; see also In re Currency Conversion Fee Antitrust Litig., 263 F.R.D 110, 129-30 (S.D.N.Y. 2009). See In re Citigroup Inc. Bond Litig., 296 F.R.D. at 378 (approving a 1.8 multiplier); Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (approving a 1.75 multiplier); In re Platinum & Palladium Commodities Litig., 2015 WL 4560206, at *4 (S.D.N.Y. July 7, 2015) (approving a 1.9 multiplier); Gattinella, 2016 WL 690877, at *2 (approving a 1.94 multiplier). Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." Goldberger, 209 F.3d at 50. There also appears to have been appropriate delegation of tasks, as the majority of Class Counsel's lodestar of $1,127,995.50 is attributable to associates' billing rates. (Miller Decl. Ex. 3; see also supra p. 13); Ayers v. SGS Control Services, Inc., 2008 WL 4185813, at *8 (S.D.N.Y. Sept. 9, 2008). And, Class Counsel has excluded any attorney time devoted to its request for fees. (Miller Decl. ¶ 79 n.6.) Partners billed at $785 to $850 per hour and associates billed at $450 to $585 per hour

(Miller Decl. Ex. 3), which "comport with rates approved by other courts in this District." In re Platinum & Palladium Commodities Litig., 2015 WL 4560206, at *3 (citing City of Providence v. Aeropostale, Inc., 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014) (where attorneys' billing rates ranged from $335 to $875 per hour)).

For the foregoing reasons, any objection to the magnitude of the requested fee award, including Klug's, has been addressed by the Court. In re Currency Conversion Fee Antitrust Litig., 263 F.R.D. at 130 (downward adjustment from Class Counsel's original fee request of 30% will "redound to the benefit of the Class"). The Court also notes that Klug acknowledges that Class Counsel has already reduced its fee petition from the 30% noticed to potential Class members to 20%. (Fairness Hr'g Tr. at 34:9-13.) Class Counsel accurately stated in its March 24, 2016 application for attorneys' fees that no objection had "been filed" challenging a fee request of "up to 30%" of the Settlement Fund. (Atty. Fees Mem. at 23.) "In order for a factual contention to be sanctionable under Rule 11, it must be utterly lacking in support." Kiobel v. Millson, 592 F.3d 78, 81 (2d Cir. 2010). Class Counsel has "sufficiently supported its contention" that Klug had not submitted an objection as of March 24, 2016 (but, instead, objected to the fee at the April 21, 2016 fairness hearing), and Class Counsel was "unaware" that Klug intended to object at the fairness hearing after Class Counsel had complied with Klug's request to reduce the fee application from 30% to 20%. StreetEasy, Inc. v. Chertok, 752 F.3d 298, 308 (2d Cir. 2014); (see Klug's Mot. Ex. 1 (Klug's e-mail, dated Jan. 6, 2016, to Class Counsel, stating: "Be advised that I will oppose any application **in excess of 20% of** the settlement and will attend the fairness hearing to testify on behalf of the class.")).[8]

---

[8] **Klug's motion for sanctions against Class Counsel based on purportedly "false" representations in Class Counsel's fee application is denied because Class Counsel's representations do not, in the Court's view, rise to the level of being "factually false." StreetEasy, Inc., 752 F.3d at 308.**

17

Class Counsel's request for reimbursement of expenses in the amount of $123,935.44 appears reasonable and is supported as "necessary for the prosecution of this litigation." Beane, 2009 WL 874046, at *9. The requested expenses consist of, among other things, payments for experts and consultants ($56,523.37), investigation services ($33,066.55), mediation ($23,250), transportation and lodging ($5,490.43), legal research ($1,239.70), and photocopying ($890.55). (Miller Decl. Ex. 4.) See In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys."). Class Counsel hired a forensic accounting consultancy, FailSafe CPA, because "this case fell under . . . the international forensic accounting standards." (Fairness Hr'g Tr. at 9:13-25 (the detailed charts that address inventory, profits, and commercial income were "prepared in consultation" with FailSafe CPA.).) Class Counsel's economics expert, Global Economics Group, participated in the mediation before Judge Phillips. (Id. at 10:3-15.) The private investigation firm, Gryphon Investigations, "compiled a list of hundreds of potential relevant witnesses with knowledge regarding the underlying claims" and "reached out to dozens of witness prospects" (Atty. Fees Mem. at 38-39), resulting in the attribution in the Complaint to "one former high-level witness at the company" (Fairness Hr'g Tr. at 23:13-21). For these reasons, the expenses are properly chargeable to the Settlement Fund. In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. at 165; In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. at 468; see also In re Ashanti Goldfields Sec. Litig., 2005 WL 3050284, at *5 (E.D.N.Y. Nov. 15, 2005) ("By far the largest expense . . . was for the services of expert witnesses . . . . This is not unusual in securities litigation actions.").

**IV.    Conclusion & Order**

18

For the foregoing reasons, Plaintiffs' motion for final approval of the Settlement [# 98] is granted, Class Counsel's application for attorneys' fees and costs [# 100] is granted in part and denied in part, and Klug's motion for sanctions against Kahn Swick & Foty, LLC [# 109] is denied.

**Note**: **Attorneys' fees are not to be distributed to Class Counsel until at least 80% of the Settlement Fund has been distributed to the Class.** On the other hand, approved attorneys' out-of-pocket expenses may be reimbursed when the initial Class distributions are made. The Claims Administrator's application for approval of fees and expenses is still under the Court's consideration.

The parties, including the Claims Administrator, are directed to participate in a status conference on September 7, 2016 at 10:30 a.m. in Courtroom 17B, 500 Pearl Street, New York, New York.

Dated: New York, New York
     May 26, 2016

                                              _RMB_

                               **Hon. Richard M. Berman, U.S.D.J.**